***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Deputy Commissioner's Opinion and Award with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. An employment relationship existed between Plaintiff-Employee and Defendant-Employer at all relevant times.
4. Employer is insured by American Interstate Insurance Co.
5. As stipulated to by the parties at the deputy commissioner hearing, the applicable workers' compensation rate for Plaintiff in this case is the maximum workers' compensation rate allowable by law.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing, Plaintiff was a 57 year old man with an eleventh grade education.
2. That prior to working for Defendant, Plaintiff worked for Hugger, Inc. from 1981 to 1997 when the plant closed. That Plaintiff's duties for Hugger, Inc. were essentially the same as with Defendant.
3. In 1997, Plaintiff began working for Defendant as a long distance truck driver. Plaintiff made mostly coast to coast trips. Some of the deliveries involved unloading the freight from his truck, for which he was paid $75.00.
4. Plaintiff's compensation rate, as stipulated to at the hearing, is the maximum rate of $560.00.
5. Prior to working for Defendant, Plaintiff had two surgeries to his cervical spine, one in 1991 from unknown causes and one in 1994 as a result of a car accident. Following his second surgery, Plaintiff returned to work and was working full time without problems. During that time, Plaintiff received treatment from Dr. Joseph Talley for chronic pain management and anxiety and depression. However, these conditions were considered well controlled by Dr. Talley.
6. On October 14, 1999, Plaintiff was on a cross-country trip for Defendant delivering furniture which required that he unload the freight from his truck. While attempting to unload a box, a strap broke and the box fell on top of him, knocking plaintiff to the floor of the truck, striking his back, head and shoulder on the floor. Plaintiff testified that he felt immediate severe pain in his arm which ran from his armpit to his elbow. At the time, Plaintiff believed that he had dislocated his shoulder.
7. The evidence shows that Plaintiff called his dispatcher and reported his injury, but that the dispatcher did not forward the information to the proper person. Plaintiff also called his daughter and asked her to make an emergency doctor's appointment for the day that he was scheduled to return home. Plaintiff's daughter made the appointment for her father with Dr. Talley.
8. On October 22, 2001, the day following his return home, Plaintiff saw Dr. Joseph Talley, a general practitioner who had previously treated plaintiff for chronic pain. Dr. Talley examined the Plaintiff and prescribed medication for pain and inflammation and referred Plaintiff to an orthopedic doctor. Plaintiff, however, was sent back out on another trip by defendant two days later and did not get to see the orthopedic doctor.
9. Plaintiff called his employer from a trip to Texas two weeks later to discuss his injury. His employer questioned whether or not Plaintiff planned to pursue his claim. Plaintiff testified that he just wanted his shoulder fixed. The employer denied receiving the call from the Plaintiff.
10. Because Plaintiff was the only adult in his household who was working and he was responsible for supporting his adult daughter who was unable to work due to a difficult pregnancy, Plaintiff continued to work despite being in pain. He continued to work full time until January 17, 2000 when he was terminated for an unrelated matter.
11. Following Plaintiff's termination, he contacted the Defendants and asked for medical treatment for his injury. He was told that he had not reported the injury on a timely basis and that he could not file workers' compensation. Defendants then denied his workers' compensation claim.
12. Plaintiff sought treatment from Dr. Steven Gudeman, a neurosurgeon. Dr. Gudeman performed a nerve conduction study on his cervical spine, a CT scan and an MRI imaging study and determined that Plaintiff had a herniated disc in his lower cervical spine and required surgery. Surgery was performed on June 21, 2000. Following surgery and a recovery period, Plaintiff stated that he felt a fifty percent improvement in his pain level. Plaintiff was released to return to work on August 28, 2000 with an eight percent impairment rating to his spine.
13. Dr. Talley testified that Plaintiff reported to him that he had an accident on October 14, 1999 in which some boxes fell on top of him. He stated that in his opinion, the accident of October 14, 1999 aggravated plaintiff's pre-existing cervical spine condition and led to his surgery.
14. Dr. Gudeman also testified that the accident of October 14, 1999 aggravated plaintiff's pre-existing condition and led to his surgery on June 21, 2000. Dr. Gudeman explained that plaintiff's previous injuries had involved the upper cervical spine around the C3-4 level and that the more recent injury involved the lower cervical spine around the C7-8 level.
15. Plaintiff was unable to work from June 21, 2000 through August 28, 2000 when he was released at maximum medical improvement by Dr. Gudeman with an eight percent impairment rating to his spine.
16. Although there is conflicting testimony concerning when and how the injury occurred, the greater weight of the evidence supports that plaintiff sustained an injury in the course and scope of employment. The Commission gives greater weight to the testimony of plaintiff and his daughter, Tonya Marie Cagney, that plaintiff immediately reported the injury and requested medical treatment than defendant's witnesses who could not recall the reporting of an injury.
17. Based on the greater weight of the evidence plaintiff has failed to establish disability from the compensable injury after August 28, 2000, when he reached maximum medical improvement.
18. Defendants had reasonable grounds for defending this claim and bringing this action to the Full Commission, although the Full Commission finds that the greater weight of the conflicting evidence is that plaintiff sustained an injury in the course and scope of his employment.
 ***********
Based on the foregoing findings, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The greater weight of the evidence presented shows that Plaintiff suffered an injury by accident on October 14, 1999. N.C.G.S. § 97-2(6).
2. Plaintiff reported the accident to his employer in a timely manner, pursuant to N.C.G.S. § 97-22. Any delay in reporting the accident was not found to be prejudicial to the Defendants.
3. As a result of his injury, Plaintiff underwent surgery to his spine resulting in his being out of work for a period of time from June 21, 2000 through August 28, 2000 and leaving him with a permanent partial impairment of 8% to his spine. Plaintiff is entitled to receive temporary total disability compensation from June 21, 2000 through August 28, 2000, pursuant to N.C.G.S. § 97-29 and permanent partial disability compensation for an 8% impairment to his spine, pursuant to N.C.G.S. § 97-31.
4. Plaintiff is also entitled to payment of any medical compensation resulting from his injury, subject to the limitations of Section 97-25.1. N.C.G.S. §§ 97-25, 97-25.1.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to the Plaintiff temporary total disability compensation at the rate of $560.00 per week from June 21, 2000 through August 28, 2000. Said amount has accrued and shall be paid to Plaintiff in a lump sum, subject to an attorney fee approved below.
2. Defendants shall pay to the Plaintiff permanent partial disability compensation for an eight percent impairment of the spine in the amount of $560.00 per week for 24 weeks. Said amount shall be paid to Plaintiff in a lump sum, subject to an approved attorney fee below.
3. Defendants shall also pay any medical expenses incurred by the Plaintiff as a result of this injury, including any future medical costs as determined by his treating doctors for so long as such treatment gives relief, effects a cure or tends to lessen Plaintiff's period of disability, subject to the limitations of Section 97-25.1.
4. Defendants shall pay an attorney's fee in the amount of twenty-five percent of the benefits paid to Plaintiff in paragraphs one and two of this Award. Payment shall be made directly to Plaintiff's counsel.
5. Defendants shall pay the costs of this action.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER